**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PSI MARINE, INC., and MARK BALUHA | ) | 3:24-CV-163 (SVN) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SEAHORSE DOCKING LLC, | ) | November 26, 2024 |
| *Defendant*. | ) | |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

Plaintiff PSI Marine, Inc., and Defendant Seahorse Docking LLC ("Seahorse") are competitors in the boat mooring products industry. PSI Marine and its President, Plaintiff Mark Baluha, claim Seahorse is liable for trademark and copyright infringement, false advertising, unjust enrichment, common law unfair competition, and violations of the Connecticut Unfair Trade Practices Act in offering three of its boat mooring products. Seahorse seeks to dismiss seven of the twelve counts of Plaintiffs' amended complaint for failure to state a claim, relating to trademark and copyright infringement and false advertising. For the reasons described below, the motion to dismiss is DENIED.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The amended complaint contains the following allegations, which are accepted as true for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

PSI Marine sells mooring products for docks and watercraft under the trademark TIDESLIDE. Am. Compl., ECF No. 31 ¶ 7. This trademark is owned by Baluha, and PSI Marine is the exclusive licensee of the trademark. *Id*. The trademark was registered in November of 2003 and is alleged to have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. §

1065. *Id.* ¶¶ 9–10.  PSI Marine is also the exclusive licensee of a registered copyright in a brochure that includes a price guide for its TIDESLIDE product.  *Id.* ¶ 22.

Seahorse also sells mooring products for docks and watercraft and, specifically, offers its Sea Slide, Tide Right, and Flex Slide mooring products on its website.  *Id.* ¶¶ 16, 18–20.  Seahorse advertises on its website that its Tide Right product contains a "patented self-adjusting fender and cleat," and also claimed that "Seahorse Docking offers the only adjustable Self-Leveling Docking System!"  *Id.* ¶¶ 86, 95.  Additionally, Seahorse displays a price guide for its Sea Slide product. *Id.* ¶¶ 24, 101; *id.* Ex. F.

PSI Marine and Baluha brought this action alleging trademark infringement in violation of Sections 32 and 43(a) of the Lanham Act in Seahorse's offering of its Sea Slide, Tide Right, and Flex Slide products (Counts One through Six); false advertising for statements made on Seahorse's website in violation of Section 43(a) of the Lanham Act (Counts Seven and Eight); copyright infringement of Plaintiffs' price guide (Count Nine); unjust enrichment (Count Ten); common law unfair competition (Count Eleven); and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* (Count Twelve).

Seahorse moves to partially dismiss the amended complaint on three grounds.  Def.'s Br., ECF No. 36-1.  First, Seahorse argues that Plaintiffs fail to state a claim for trademark infringement in Counts Two, Three, Five, and Six as to Seahorse's Tide Right and Flex Slide products.  Second, Seahorse contends that Plaintiffs fail to state a claim for false advertising in Counts Seven and Eight, arguing that the statements made on its website were true.  Finally, Seahorse argues that Plaintiffs' copyright claim in Count Nine fails to state a claim, as Seahorse did not copy any protectible elements of Plaintiffs' copyright registration.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief*." Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**III.    DISCUSSION**

The Court holds that the amended complaint states plausible trademark infringement, false advertising, and copyright claims against Seahorse.  For the reasons described below, Seahorse's motion to dismiss is denied.

A.    Trademark Infringement (Counts Two, Three, Five, and Six)

Plaintiffs plausibly state a claim for trademark infringement in Counts Two and Three (alleging that Seahorse's use of Tide Right and Flex Slide violate Section 32 of the Lanham Act) and in Counts Five and Six (alleging that Seahorse's use of Tide Right and Flex Slide violate Section 43(a) of the Lanham Act).

*1.  Legal Standard*

Plaintiff brings claims under Sections 32 and 43(a) of the Lanham Act.  Both prohibit the use of another person's mark in a manner that is "likely to cause confusion," "to cause mistake," or "to deceive."  *See* 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a).  Section 32 pertains to registered marks, *see* 15 U.S.C. § 1114(1)(a), and Section 43(a) pertains to any "word, term, name, symbol, or device, or any combination thereof," *see* 15 U.S.C. § 1125(a).  The parties agree that the same analysis applies to both types of claims.

The Court analyzes trademark infringement claims in two steps.  First, the Court determines whether a plaintiff's mark "merits protection." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012).  Second, the Court determines whether a defendant's use of a similar mark "is likely to cause consumer confusion." *Id.* at 217. Only the second step is at issue here.  *See* Def.'s Br. at 8–11.

Deciding whether a defendant's alleged actions are likely to cause confusion is a "fact-intensive inquiry that depends greatly on the particulars of each case." *Kelly-Brown v. Winfrey*,

717 F.3d 295, 307 (2d Cir. 2013). Indeed, in the ultimate resolution of trademark infringement claims on the merits in the Second Circuit, courts evaluate the *Polaroid* factors, which include the strength of the trademark, the degree of similarity between the two marks, the proximity of the products and their competitiveness with one another, the likelihood that the prior owner will bridge the gap by developing a product for sale in the market of the alleged infringer's product, evidence of actual consumer confusion, and sophistication of consumers in the relevant market. *Id.* (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). This is not a "mechanical" test. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (internal citation omitted).

Because this inquiry is so fact-specific, it is generally inappropriate for the pleadings stage. In fact, Plaintiffs' hurdle for pleading the likelihood of confusion is "exceedingly low." *BBAM Aircraft Mgmt., LP v. Babcock & Brown LLC*, No. 20-cv-1056 (VLB), 2021 WL 4460258, at *4 (D. Conn. Sept. 29, 2021); *see also Cousteau Soc'y, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 309 (D. Conn. 2020) ("as a general rule, the likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss") (cleaned up) (internal citation omitted).

While there is an "exceedingly low" threshold for a trademark infringement claim to clear at the motion to dismiss stage, there is still a threshold to surmount nonetheless. Specifically, a court may dismiss a claim for trademark infringement "if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove." *Scotch & Soda B.V. v. Scotch & Iron LLC*, No. 1:17-cv-04561 (ALC), 2018 WL 2224997, at *3 (S.D.N.Y. May 15, 2018). Another articulation of this principle is that a plaintiff's complaint will not survive a motion to dismiss where the marks are obviously dissimilar. *See Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311 (S.D.N.Y. 2005).

2. *Discussion*

Here, Plaintiffs have adequately pleaded the four counts for trademark infringement that Seahorse seeks to dismiss related to Seahorse's Tide Right and Flex Slide products. In alleging that Seahorse's Tide Right and Flex Slide are both "similar in, *inter alia*, connotation to Plaintiffs' registered TIDESLIDE mark," Am. Compl. ¶¶ 37, 47, 67, 77, Plaintiffs plausibly allege that Seahorse's use of "Tide Right" and "Flex Slide" is likely to "cause confusion as to the affiliation, connection, or association of defendant with plaintiff." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (cleaned up). Indeed, Plaintiffs have plausibly alleged a similarity in connotation through a similarity of product names given that "Tide Right" includes "Tide" and "Flex Slide" includes "Slide." *See* Am. Compl. ¶¶ 37, 47, 67, 77. Plaintiffs further allege that Seahorse, for its Tide Right and Flex Slide products, uses identical or at least related goods to PSI Marine's registered trademark, targets the same customers, and uses the same marketing channels as PSI Marine for their TIDESLIDE products. Am. Compl. ¶¶ 38–40, 48–50, 68–70, 78–80. That Plaintiffs do not specifically define the connotation of their TIDESLIDE mark and use the catch-all phrase "*inter alia*" to invoke other alleged similarity—while not a model of pleading clarity—is not fatal, in light of these other allegations. For instance, Plaintiffs do not baldly assert that the similarities between TIDESLIDE and Tide Right and Flex Slide are likely to cause confusion in rote, formulaic fashion. Instead, Plaintiffs' assertions of customer confusion are supported by specific factual allegations relating to the similarity in product names and placement, making the claims plausible at this stage.

Seahorse's heavy reliance on *Le Book* is misplaced. In contending that PSI Marine cannot exclusively control use of the words "tide" and "slide," Seahorse cites to *Le Book*'s observation that the plaintiff's mark "Le Book" and the defendant's publication, "The Black Book," shared

only the word "book," which was generic and unregistrable as a trademark. *See Le Book*, 418 F. Supp. 2d at 311. But in dismissing the plaintiff's trademark infringement claim, *Le Book* also considered many other aspects of similarity beyond use of the word "book," finding that the parties' marks were quite "physically and visually distinct." *See id.* at 311–12. The Court cannot make the same findings here.

Rather, the district court's analysis in *Scotch & Soda B.V.* is more applicable to the present case. There, the court rejected the defendants' arguments that the plaintiff was trying to enforce a mark based only on the word "scotch," where the plaintiff's marks all contained "SCOTCH" and another word. *Scotch & Soda B.V.*, 2018 WL 2224997, at *3–4 (distinguishing *LeBook*). The court also credited plaintiff's allegations that the defendants' mark was "highly similar" and was used in connection with highly similar clothing goods and services. *Id.* Here, Plaintiffs have alleged not only that TIDESLIDE and Tide Right and Flex Slide are similar in connotation, but also that Seahorse uses the Tide Right and Flex Slide names on identical or related goods, marketed through similar channels. Am. Compl. ¶¶ 36–40, 46–50, 66–70, 76–80. Plaintiffs' allegations, then, do not rest solely on Seahorse's use of one generic word.

In reaching this conclusion, the Court need not apply all of the *Polaroid* factors at this stage of the litigation. Because the inquiry is so fact-specific, a full *Polaroid* analysis is not appropriate when deciding a motion to dismiss. *See Uber, Inc. v. Uber Techs., Inc.*, 521 F. Supp. 3d 455, 465 (S.D.N.Y. 2021) (declining to engage in a full *Polaroid* analysis at the motion to dismiss stage "[b]ecause a more developed factual record is needed" and denying motion to dismiss trademark infringement claim). In any event, to the extent Seahorse seeks to invoke the *Polaroid* factors, it only argues one: the degree of similarity between its marks and PSI Marine's TIDESLIDE mark. *See* Def.'s Br. at 9–11; Def.'s Reply Br., ECF No. 41 at 7–9. The Court concludes that the "Tide

Right" and "Flex Slide" product names are similar enough to TIDESLIDE, particularly when combined with Plaintiffs' other allegations, to meet the "exceeding low" pleading threshold. *See BBAM Aircraft Mgmt., LP*, 2021 WL 4460258, at \*4. Of course, Seahorse remains free to raise the *Polaroid* factors at a later stage of this litigation.

Accordingly, the motion to dismiss Counts Two, Three, Five, and Six is denied.

### B.  False Advertising (Counts Seven and Eight)

The Court also concludes that Counts Seven and Eight plausibly state a claim for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). False advertising claims under the Lanham Act have two components:  a plaintiff must show falsity and that the false or misleading representation involved an inherent or material quality of the product. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016). Seahorse's motion is not directed at the second of these elements. Accordingly, the Court focuses on whether Plaintiff plausibly alleged a false or misleading representation. The false or misleading representation element is established if either (1) the "challenged advertisement is literally false, *i.e.*, false on its face" or (2) "the advertisement, while not literally false, is nevertheless likely to mislead or confuse customers." *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir. 2010). Plaintiffs contend that two of Seahorse's statements on its websites are literally false:  that Seahorse's Tide Right product contains a "patented self-adjusting fender and cleat" (Count Seven) and that "Seahorse Docking offers the only adjustable Self-Leveling Docking System!" (Count Eight).

First, the Court holds that Count Seven plausibly alleges a false statement. That count alleges that Seahorse advertises on its website that its Tide Right product contains a "patented self-adjusting fender and cleat," but that Seahorse, in fact, is not the owner of any U.S. patent. Am. Compl. ¶¶ 86–87. The Count further alleges that, to the extent that Seahorse tries to claim that it

is the owner of U.S. Patent No. 11,035,090 ("'090 Patent"), this patent is not owned by Seahorse (but rather a dissolved LLC named Seahorse Fender & Docking) and does not disclose a "cleat." *Id.* ¶¶ 88–90.

As an initial matter, accepting Plaintiffs' well-pleaded factual allegations as true, as the Court must at this stage, Count Seven states a claim for false advertising. *See Iqbal*, 556 U.S. at 678. Plaintiffs offer specific facts relating to the alleged falsity of Seahorse's statement—namely that Seahorse advertised that its Tide Right product was patented but that the Tide Right product was not, in fact, patented. In the Court's view, this analysis is dispositive of the legal sufficiency of Count Seven at the motion to dismiss stage.

Nonetheless, both parties invite the Court to review documents outside of the amended complaint, which the Court now analyzes. Seahorse counters Plaintiffs' allegations by arguing that U.S. Patent and Trademark Office ("PTO") records show that it is the record assignee of multiple patents, including the '090 Patent and U.S. Patent No. 9,302,750 ("'750 Patent"), and that the Court may take judicial notice of such records. Def.'s Br. at 11–12. Seahorse further asserts that its Tide Right product is a commercial embodiment of the self-adjusting fender and cleat shown in Figure 6 of the '750 Patent. *Id.* at 12; ECF No. 36-3 at 5 ('750 Patent depicting Figure 6). Plaintiff concedes that the Court may take judicial notice of the '750 Patent. Pls.' Br., ECF No. 40 at 16. The parties disagree, however, as to whether the '750 Patent's possible *nunc pro tunc* assignment to Seahorse made Seahorse the owner of a valid patent at the time the representation of patent protection was made. *See* ECF No. 41-2 (Confirmatory Assignment executed May 6, 2022, effective *nunc pro tunc* as of October 9, 2020). Moreover, the parties both dive into highly technical and fact-intensive analysis of whether the '750 patent actually covers a "self-adjusting fender and cleat."

The Court agrees with the parties that it may take judicial notice of matters of public record, including public filings with the PTO. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (recognizing that a court may take judicial notice of relevant matters of public record); *Nespresso USA, Inc. v. Peet's Coffee, Inc.*, No. 22-cv-02209 (CM), 2023 WL 374980, at *4 (S.D.N.Y. Jan. 24, 2023) ("It is well established that [t]he Court may properly take judicial notice of official records of the United States Patent and Trademark Office."). But the scope of what the Court may take judicial notice of is not unlimited. Indeed, the Court may only take judicial notice of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Moreover, the purpose of judicial notice is generally to establish the fact of a document's existence and not to establish the truth of the matters asserted therein. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). To hold otherwise would "permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding." *See Nespresso USA, Inc.*, 2023 WL 374980, at *4.

Applying those principles here, the Court finds that it may take judicial notice of the *existence* of the '750 patent and of the fact that the PTO records reflect an assignment of that patent with an "execution date" of May 6, 2022, *see* ECF No. 40-2 at 2, but that it cannot, through judicial notice, decide what intellectual property rights may have been conveyed in a possible *nunc pro tunc* patent assignment. Nor is it appropriate to decide the question of whether the '750 patent discloses a self-adjusting fender and cleat at this juncture. Not only does the parties' extensive briefing on these questions highlight that there is disagreement, but these questions would also require the Court to make findings as to mixed questions of law and fact. To take judicial notice to resolve these issues would expand the doctrine of judicial notice beyond its established scope, which is limited to facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Moreover, setting the scope of judicial notice aside, such fact-specific inquiries are inappropriate at the motion

to dismiss stage. *See Blank v. Pollack*, 916 F. Supp. 165, 172 (N.D.N.Y. 1996) (finding falsity regarding the scope of a patent to be a material question of fact at the summary judgment stage); *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 427 (D. Del. 2003) (taking counterclaim plaintiff's allegations of a false or misleading claim of patent ownership as true at the motion to dismiss stage).

For similar reasons, the Court also concludes that Count Eight states a claim for false advertising under the Lanham Act. That count alleges that Seahorse advertises on its website that it "offers the only adjustable Self-Leveling Docking System," when, in fact, PSI Marine also sells adjustable self-leveling docking systems. Am. Compl. ¶¶ 95–96. Seahorse argues that, because it owns the '750 Patent, it has the exclusive right to make, use, and sell its patented self-leveling docking system. Def.'s Br. at 13. As discussed above, the Court cannot engage in such an inquiry by judicial notice or, even after taking such notice, at the motion to dismiss stage. At this juncture, it is sufficient for the Court to conclude that Plaintiffs have sufficiently alleged the falsity of Seahorse's statement that it offered the *only* adjustable self-leveling docking system when Plaintiffs, in fact, also offered such a system.

Seahorse remains free to renew its arguments as to these issues at summary judgment.

### C. Copyright Infringement (Count Nine)

Finally, the Court holds that Plaintiffs have stated a plausible claim for copyright infringement.

Count Nine alleges that PSI Marine is the exclusive licensee of a copyright ("'659 copyright registration") in a brochure that includes a price guide for its TIDESLIDE product in which the X-axis represents various steel size categories and the Y-axis represents various boat size categories and the price of the TIDESLIDE product varies based on the inputs on either axis.

11

*See* Am. Compl. ¶¶ 22–24; *id.*, Ex. E.  Plaintiffs specifically allege that Seahorse's price guide

infringes on the '659 copyright registration by copying (1) the "price guide layout" and (2) the

boat and steel size "categories and designations."  Am. Compl. ¶¶ 24, 101; *see id.*, Ex. F.  The

Court holds that Plaintiffs have stated a plausible claim for copyright infringement as to these

elements of PSI's brochure.

To survive a motion to dismiss, a copyright infringement claim must plausibly allege "(1)

ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original."  *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020).  To satisfy the second

element, a plaintiff must show that "(1) the defendant has actually copied the plaintiff's work; ***and***

(2) the copying is illegal because a substantial similarity exists between the defendant's work and

the protectible elements of plaintiff's [work]."  *Id.* (emphasis in original).  As Seahorse only

challenges Count Nine by arguing that it did not copy any protectable elements of PSI Marine's

copyright, the Court focuses only on that portion of the copyright infringement analysis.  *See* Def.'s

Br. 13–16.

A fundamental principle of copyright law is that copyright protection extends only to

original works.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("The

*sine qua non* of copyright is originality.  To qualify for copyright protection, a work must be

original to the author.").  To be original, a work must possess "at least some minimal degree of

creativity."  *Id.*  The requisite degree of creativity is "extremely low;" all that is required is "some

creative spark, no matter how crude, humble or obvious it might be."  *Id.*  While a certificate of

copyright registration constitutes *prima facie* evidence of the validity of the copyright and the

originality of a work, the mere fact that a work is copyrighted "does not mean that every element

of that work is protected."  *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001).  Rather, the

"threshold question is what characteristics of [plaintiffs'] design have gained copyright protection." *Id.* (quoting *Herbert Rosenthal Jewelry Corp v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) (*per curiam*)).

An important corollary is that facts, by their nature neither original nor works, are not copyrightable. *Id.* at 345. Compilations of facts, on the other hand, may sometimes be copyrightable, as the "compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *Id.* at 358. The key determining factor between unprotectable facts and protectable compilations again draws on the fundamental principle underlying copyright law: originality. Specifically, there are three requirements for a compilation of facts to qualify for copyright protection: "(1) the collection and assembly of preexisting data; (2) the selection, coordination, or arrangement of that data; and (3) a resulting work that is original, by virtue of the selection, coordination, or arrangement of the data contained in the work." *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509, 512 (2d Cir. 1991) (citing *Feist*, 499 U.S. at 357).

In applying these principles, the Court concludes that, while it is a close question, the "price guide layout" is an original compilation on which Plaintiffs' claim of copyright infringement claim can be based. *Feist* makes clear that, if the "selection and arrangement" of facts are original, "these elements of the work are eligible for copyright protection." *Feist*, 499 U.S. at 349. The copyright in a factual compilation is "thin," such that a subsequent compiler "remains free to use the facts contained in another's publication to aid in preparing a competing work," but the subsequent compiler cannot "feature the same selection and arrangement." *Id.* Here, Plaintiffs have *prima facie* evidence of copyright protection, since the brochure in which the price guide appears is

alleged to be copyrighted under the '659 registration.  Am. Compl. ¶ 22.  The Court further concludes that choosing to arrange the information in the table format, with steel size categories and designations on the X-axis and boat size categories and designations on the Y-axis, entails the minimal degree of creativity necessary to be protectable.  Unlike the unoriginal alphabetical arrangement of contact information in a phone book in *Feist*, here, Plaintiffs allege a certain curation of facts in which the copyright author made a creative decision regarding "which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers."  *Feist*, 499 U.S. at 348.  The price guide layout does not fall into the "narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent."  *Id.* at 359; *see also Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1023 (E.D. Wis. 2010) (finding copyright infringement claim concerning spreadsheet with taxonomy categories selected and arranged by the plaintiff to be sufficiently original for purposes of motion to dismiss).

Seahorse's argument that the categories and designations simply include unprotectable factual information misses the plausibly alleged compilatory function performed by the copyright's author.  The physical measurements of a boat or shaft would be non-copyrightable facts.  The grouping into various classes of those measurement on a price guide layout, however, is an original compilation of those facts.  Crucially, Plaintiffs allege that the boat size categories and designations were "created," thereby making plausible that the categories are a "selection, coordination, or arrangement" of the data that is original by virtue of that selection, coordination, or arrangement.  *See* Am. Compl. ¶ 23; *Feist*, 499 U.S. at 348 ("[C]hoices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the

copyright laws."). Seahorse's citation to *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–64 (2d Cir. 2010), is likewise inapposite because that case addressed whether a district court could consider, on a motion to dismiss, whether two works (architectural designs) were substantially similar. As Seahorse does not advance the issue of substantial (dis)similarity in the present motion, that case is not relevant here.

Accordingly, the Court concludes that Count Nine states a claim for copyright infringement.

## IV.    CONCLUSION

For the reasons described herein, Defendant's motion to dismiss Plaintiffs' amended complaint is DENIED.


**SO ORDERED** at Hartford, Connecticut, this 26th day of November, 2024.


           */s/ Sarala V. Nagala*
           SARALA V. NAGALA
           UNITED STATES DISTRICT JUDGE