UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PSI MARINE, INC. and MARK R. BALUHA, | : <br> : <br> : |
| *Plaintiffs,* | : <br> : |
| v. | :     No. 3:24-cv-163 (SVN) |
| SEAHORSE DOCKING LLC, | : <br> : <br> : |
| *Defendant.* | : <br> : |

## RULING AND ORDER ON MOTION FOR PROTECTIVE ORDER

Plaintiffs PSI Marine, Inc. and Mark Baluha, the licensee and owner of the TIDESLIDE trademark, bring this action alleging trademark infringement, unjust enrichment, and unfair trade practices against a direct competitor in the mooring products market, defendant Seahorse Docking LLC.  In responding to written discovery, Seahorse has designated certain documents Confidential-Attorney's Eyes Only ("AEO") under the Standing Protective Order on the basis that they contain confidential financial and customer information and details concerning the acquisition of intellectual property that would give plaintiffs an unfair competitive advantage if disclosed.  As an added layer of protection, Seahorse withheld the AEO documents until plaintiffs provisionally stipulated that one of their attorneys of record – Katherine Baluha, the daughter of plaintiff Mark Baluha – would refrain from viewing them absent further order of the Court.  *See* ECF 48 at 17, ECF 54 at 7 n.2.  Now pending is defendant's corresponding Motion to Modify Protective Order, ECF 55, requesting that Attorney Baluha be wholly prohibited from accessing the AEO documents.  For the reasons that follow, the motion is granted in part and denied in part.

A. **Legal standard**

Rule 26 provides that a court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). To meet the good cause standard, the party seeking protection must show that disclosure will work a clearly defined and very serious injury. [1] *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D. Conn. 2004) (Fitzsimmons, M.J.).

The issue here is whether disclosure of Seahorse's highly confidential AEO information to Attorney Baluha creates an unacceptable risk that she will inadvertently use the information to give PSI Marine a competitive business advantage over Seahorse. Although every attorney, whether in-house or retained, is subject to codes of professional conduct, an attorney's ethical obligations may not sufficiently mitigate the risk of inadvertent disclosure in certain circumstances. *See Travel Leaders Grp. Holdings, LLC v. Thomas*, No. 24-cv-1208 (LAP), 2024 WL 2058436, at *1 (S.D.N.Y. May 8, 2024) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984)). "Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis," and "particular circumstances may require specific provisions . . . in light of the particular counsel's relationship and activities." *U.S. Steel* at 1468.

To determine on an individualized basis whether the risk of disclosure is unacceptable, courts have applied a two-step analysis. *See Travel Leaders*, 2024 WL 2058436 at *1. First, the

---

[1] The requesting party must also demonstrate that the information merits protection based on its confidentiality and value to the business and its competitors. *Uniroyal*, 224 F.R.D. at 57. Here, plaintiffs do not dispute that the information merits AEO protection, but they object to any further layers of protection concerning Attorney Baluha.

2

court examines whether the attorney is involved in "competitive decision-making," which is shorthand for "a counsel's activities, association, and relationship with a client that . . . involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* (quoting *U.S. Steel* at 1468 n.3). Second, the court balances the risk of inadvertent disclosure against the requesting party's need for the information. [2] *Id.*

B. Analysis

1. **Risk of inadvertent disclosure**

    a. **No competitive decision-making**

Regarding the first step, Seahorse contends that Attorney Baluha is a competitive decision-maker at PSI Marine. However, her sworn statements demonstrate otherwise.

Attorney Baluha has no present ownership or financial interest in PSI Marine's business, and she further averred that she has no present intention of working in the business in the event it passed to her via her parents' estates. ECF 65 ¶¶ 4-5. Her past involvement includes attending boat shows until 2017, staffing a TideSlide vendor booth more than ten years ago, and installing TideSlides as a young adult more than 15 years ago. *Id.* ¶ 6. She also has a PSI Marine Inc. email address, ECF 48-13 ¶ 11, which she used as her personal email until approximately 10

---

[2] This two-step analysis has appeared most frequently in patent cases, including in assessing whether an attorney should be barred from using information obtained in discovery to prosecute patent applications to the disadvantage of the disclosing party who produced the highly confidential information (i.e., patent prosecution bar). *See*, *e.g.*, *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 82 (S.D.N.Y. 2015). But it also has been used in non-patent cases such as *Travel Leaders*, 2024 WL 2058436, and *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24-cv-2783 (PAE), 2024 WL 2833114, at *2 (S.D.N.Y. June 3, 2024), and the seminal *U.S. Steel* decision also did not involve patent law.

years ago, ECF 65 ¶ 11. She removed that email account from her Outlook interface sometime approximately in 2023 and rarely checks it. *Id.*

Since becoming an attorney, Attorney Baluha has provided occasional legal services to PSI Marine, including drafting a lease and at least one nondisclosure agreement; occasionally reviewing large, proposed purchase agreement contracts to evaluate potential liability and other legal implications, such as nondisclosure requirements; and evaluating whether customer disputes call for intervention of legal counsel. ECF 48-13 ¶¶ 11-14. She is generally cognizant of business filing requirements and has reminded family members to ensure timely compliance. ECF 65 ¶ 7. Attorney Baluha directly avers: "I have never performed functions or had duties relating to TideSlide pricing, cost or competitive evaluations." *Id.* ¶ 15. Nor has she been involved in trademark or copyright registration or patent prosecution, nor the licensing of any intellectual property, nor business decisions related to licensing for PSI Marine. ECF 65 ¶¶ 8-10.

On this record, Attorney Baluha does not advise or participate in PSI Marine's decisions made in light of similar or corresponding information about a competitor, so her role is markedly short of what would constitute involvement in competitive decision-making as described in *U.S. Steel*, 730 F.2d at 1468 n.3. A useful litmus test is whether, due to the nature of her work for PSI Marine, knowledge of the competitor's AEO information will put her in the "untenable position" of having to either refuse to advise her client or violate the protective order. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (denying AEO access to in-house counsel who advised on contract, employment, and competitive marketing decisions); *accord. Norbrook Lab'ys Ltd. v. G.C. Hanford Mfg. Co.*, No. 5:03-cv- 165 (HGM)(GLS), 2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003) (denying AEO access to attorney who served as corporate secretary on Board of Directors because discussion of competitive decision-making at

4

Board meetings would place his ethical obligations under the protective order in direct competition with his fiduciary duty to advise the client). It does not appear that Attorney Baluha's ordinary services to PSI Marine will place her in such an untenable position. Her connection to PSI Marine's core business is incidental and, in many instances, dated. Consequently, the risk of inadvertent disclosure of Seahorse's highly confidential AEO information is low. *See*, *e.g.*, *Infosint S.A. v. H. Lundbeck A.S.*, No. 06-cv-2869 (LAK)(RLE), 2007 WL 1467784, at *6 (S.D.N.Y. May 16, 2007) (finding no precedent that general corporate legal advice constitutes involvement in competitive decision-making); *Fleming v. Parnell*, No. C13-5062 (BHS), 2013 WL 4551851, at *4 (W.D. Wash. Aug. 28, 2013) (attorney who did not advise on trade secrets, product design or pricing was not competitive decision-maker); *cf.*, *e.g.*, *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 84 (S.D.N.Y. 2015) (attorneys were involved in competitive decision-making where they gathered information used to pursue competitors or customers for a license, negotiated and consummated license agreement contracts, and participated in patent enforcement actions).

      **b. Weight of family relationship**

Notably, the case law does not support Seahorse's suggestion that Attorney Baluha's familial connection to her father's business, by itself, creates an unacceptable risk of inadvertent disclosure. The *Hirsh* case that Seahorse cites is distinguishable insofar as that attorney, who was the plaintiff's son, was also in-house counsel for the family corporation as well as an officer who held some prior conditional authority to act as its president. *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1303-04 (Ct. Int'l Trade 1987). The same is true of the *Intel* case cited by Seahorse: the court's fundamental concern was that the attorney was involved in negotiating the terms of licensing agreements as part of settling lawsuits, which included evaluation of the

strength of the patent, her client's products implicated by the patent, and competitors' products implicated by the patent, which she admitted directly affected her client's competitiveness. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000).  Here, Attorney Baluha lacks the depth of involvement in plaintiffs' business that was present in *Hirsh* and *Intel*, and neither decision held that a family relationship or close working relationship alone creates an unacceptable risk of inadvertent disclosure.  Rather, *Hirsh* and the handful of similar cases the Court has found discuss a family relationship as potentially heightening the risk that already exists due to the nature of the attorney's services to the business.  *Compare Thomas & Betts Corp. v. Panduit Corp.*, No. 93-cv-4017, 1997 WL 603880, at *12 (N.D. Ill. Sept. 23, 1997) (risk would be "heightened" where in-house counsel was also family member of corporate officers), *with Fleming v. Parnell*, No. C13-5062 (BHS), 2013 WL 4551851, at *3 (W.D. Wash. Aug. 28, 2013) ("Simply because counsel is related to a client does not alone make the attorney more likely to be a 'competitive decision-maker,' as defined in *U.S. Steel*[.]").  Similarly, although the *Intel* court was concerned about the frequency of the attorney's interactions with competitive decision-makers, it described this as an "exacerbating" factor rather than an independent ground for denying access to the competitor's AEO information.  *Intel*, 198 F.R.D. at 530.

Furthermore, *U.S. Steel* and its progeny identify competitive decisonmaking as the crucial factor in the risk analysis because that is the context in which even a well-intentioned attorney might inadvertently utilize a competitor's AEO information "due to the difficulty in mentally segregating the origin of ideas." *Mercexchange, L.L.C. v. eBay, Inc.*, 467 F. Supp. 2d 608, 623 (E.D. Va. 2006) ("[I]t is oftentimes impossible for an individual, even with the noblest of intentions, to delineate between ideas that they may advance as a result of their own creation, and those influenced by past exposure to confidential information."); *see also Vasudevan Software,*

6

*Inc. v. Int'l Bus. Machines Corp.*, No. C09-05897 (RS)(HRL), 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010) (*U.S. Steel* and progeny "were largely concerned with the difficulty for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so") (citation and quotation marks omitted).  In contrast, ordinary family interactions such as conversations, dinners, and holiday celebrations do not raise a risk of inadvertent disclosure because a competitor's confidential business information has no relevance in that context.  And to the extent that Seahorse fears that Attorney Baluha might feel pressure to disclose AEO information due to family loyalties, that would amount to deliberate disclosure, not inadvertent.  In that respect, Attorney Baluha has sworn that she understands her AEO obligations under the Standing Protective Order, *see* ECF 65 ¶ 16, and the record contains no basis to discredit that affirmation.  *See LEGO A/S v. Best-Lock Const. Toys, Inc.*, No. 3:11-cv-1586 (CSH), 2012 WL 6156129, at *3 (D. Conn. Dec. 11, 2012) (court will not assume that attorney will act dishonorably or violate the protective order).

### 2. Plaintiffs' need for the information

Because the risk of inadvertent disclosure is low under the circumstances, it is easily outweighed by plaintiffs' asserted need for Attorney Baluha to access the information.  Seahorse contends that she does not need access because the AEO information has been produced to the three other attorneys who have appeared for plaintiff.  Seahorse further argues that Attorney Baluha has no expertise in intellectual property matters such that her lack of access would have minimal impact, if any, on plaintiffs' ability to effectively prosecute this case.  However, she has litigation experience, and plaintiffs have asked her to serve as a trusted liaison to help them understand and weigh the advice of her co-counsel.  As an experienced family law practitioner, Attorney Baluha understands general litigation strategy and is likely familiar with negotiation

and mediation of disputes and assessment of settlement considerations, all of which are essential to the conduct of any litigation in federal court and will be beneficial to PSI Marine. Access to the AEO documents will assist Attorney Baluha in meaningfully performing that role. *See LEGO*, at *3 ("It is not difficult to imagine that [plaintiff's] ability to conduct effective litigation will be enhanced by the contribution of its insider counsel, who would need to be informed in order to contribute most meaningfully."). And, in the inverse, cabining her from certain aspects of the strategic discussions will introduce administrative burden and potentially reduce her ability to provide that counsel, especially as pertains to assessing the value of plaintiffs' damages claims and their relative likelihood of success. *See, e.g., Travel Leaders Grp. Holdings, LLC v. Thomas*, No. 24-cv-1208 (LAP), 2024 WL 2058436, at *2 (S.D.N.Y. May 8, 2024) (granting AEO access to general counsel who was lone liaison between external counsel and company because denying access "would stymy her ability to consider information relevant to the formulation of case strategy and the facilitation of settlement discussions, and it would impose an unreasonable burden on [the plaintiff] and its counsel"); *accord*. *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24-cv-2783 (PAE), 2024 WL 2833114, at *2 (S.D.N.Y. June 3, 2024). While Attorney Baluha's envisioned role may not be absolutely essential to ensure that plaintiffs can fairly prosecute their claims, plaintiffs' showing of need is adequate when balanced against the low risk of inadvertent disclosure in this case.

Nonetheless, as an additional safeguard, the Court will limit Attorney Baluha to read-only access to Seahorse's AEO information via the e-discovery platforms of co-counsel, who have assured the Court that such a restriction is possible.

### C. Order

For all the foregoing reasons, Seahorse's Motion to Modify Protective Order, ECF 55, is GRANTED IN PART AND DENIED IN PART as follows. Attorney Baluha may have read-only access via the e-discovery platforms of co-counsel to the materials that Seahorse has designated as Confidential-Attorney's Eyes Only under the Standing Protective Order, ECF 10. Additionally, Attorney Baluha may participate fully in communications concerning the AEO materials among plaintiffs' counsel and any other persons who are authorized by the Standing Protective Order to access the AEO materials. Attorney Baluha shall not make, retain, or disseminate any physical or digital copies of any of Seahorse's AEO information. At all times during and after this litigation, plaintiffs' counsel, including Attorney Baluha, shall strictly comply with all provisions in the Standing Protective Order regarding the handling of Designated Material, including the requirement that Designated Material shall not be used or disclosed for any purpose other than the litigation of this action. *See* ECF 10 ¶ 5.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 11th day of December, 2024, at Bridgeport, Connecticut.

                                                       */s/ S. Dave Vatti*
                                                       S. DAVE VATTI
                                                       United States Magistrate Judge